UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MANUEL DELEG,

                     Civil Action No.: 1:16-CV-07762

               Plaintiff,

          v.                     **FIRST AMENDED COMPLAINT**

CROMAN REAL ESTATE, INC., CROMAN
FAMILY ASSOCIATES, LLC., 9300 REALTY        **PLAINTIFF DEMANDS**
MANAGEMENT INC., 151 RIVINGTON HOLDINGS   **TRIAL BY JURY**
LLC, 153 RIVINGTON LLC, 182 STANTON LLC, 186
AVE B NY LLC, 215 AVENUE B REALTY LLC, 326-
338 E. 100TH LLC, 380-382 E. 10TH LLC, MAJOR
PERRY STREET CORP., 134 ORCHARD LLC, and
STEVEN CROMAN,

               Defendants.
-----------------------------------------------------------------X

      Plaintiff MANUEL DELEG ("Deleg" or "Plaintiff"), by his attorneys, RAPAPORT

LAW FIRM, PLLC, as and for his First Amended Complaint, alleges as follows:

## PRELIMINARY STATEMENT

      1.      This lawsuit seeks to recover minimum wages, overtime compensation, failure

to pay timely wages, unlawful wage deductions, and spread of hours pay under the FLSA and

NYLL on behalf of Deleg, who handled repair, maintenance, light construction, cleaning,

and similar tasks at eleven apartment buildings in Manhattan.

      2.      This lawsuit also seeks a binding judicial declaration pursuant to Fed. R. Civ.

P. 57 that Deleg is not bound by the stipulation of class action settlement (the "Major Perry

Settlement Agreement")[1] and final order dated July 27, 2015 (the "Major Perry Final

Order")[2] in the case "Rudy Colon, _et al._, against Major Perry Street Corp., et al.", U.S.

District Court for the Southern District of New York, Civil Action No. 12 CV 3788 (the

"Major Perry Case"), and that Deleg's rights to compensation for unpaid minimum and

---

[1] The Major Perry Settlement Agreement is at the electronic docket for the Major Perry Case as Dkt. No. 102-2.
[2] The Court's Final Order approving the Major Perry Settlement Agreement dated July 27, 2015, is at the electronic docket of the Major Perry Case at Dkt. No. 118.

overtime wages are not diminished or impaired by the Major Perry Settlement Agreement and/or the Major Perry Final Order.

3.    Defendants assert in the Third Affirmative Defense of their Answer (Defs.' Answer p. 11 [Dkt. 45]) that all of Deleg's wage and hour claims (whether under the FLSA or NYLL) for any period up to August 26, 2015, are "barred" by the Major Perry Final Order [Major Perry Case, Dkt. No. 118], in which the Court approved the Major Perry Settlement Agreement [Major Perry Case, Dkt. No. 111].

4.    Deleg did not opt in to the Major Perry Case, and he received no remuneration from the Major Perry Settlement Agreement.

5.    The defendants in this lawsuit include eight entities (151 Rivington Holdings LLC, 153 Rivington LLC, 182 Stanton LLC, 186 Ave B NY LLC, 215 Avenue B Realty LLC, 326-338 East 100th LLC, 380-382 E. 10th LLC, and 134 Orchard LLC) that were not parties to the Major Perry Case and, upon information and belief, were not parties to the Major Perry Settlement Agreement.

6.    Pursuant to Fed. R. Civ. P. 60(d)(1) and (2), Deleg requests a final judgment setting aside the Major Perry Final Order to the extent that it bars or otherwise limits Deleg's minimum wage and overtime claims against any of the defendants in this case.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction of this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217.  This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. § 1331), and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367.

8.     Defendants CROMAN REAL ESTATE, INC. ("CRE") and CROMAN FAMILY ASSOCIATES, LLC ("CFA") and STEVEN CROMAN ("Croman") (collectively as "Defendants") are an enterprise with a common business purpose and under common control whose annual volume of sales made or business done is not less than $500,000, the activities of which effect interstate commerce in that the employees of CRE, CFA and Croman, including but not limited to the Plaintiff, handle goods, including janitorial goods, that have moved in interstate commerce.

9.     Defendants CRE, CFA and Croman operate and control a business enterprise for a common business purpose that includes, *inter alia*, management and control of multiple family dwellings located in New York County, including *inter* alia, the following apartment buildings where Plaintiff was employed:  382 East Tenth Street; 380 East Tenth Street; 147 Avenue A; 186 Avenue B; 188 Avenue B; 215 Avenue B; 222 Avenue B; 134 Orchard Street; 151 Rivington Street; 153 Rivington Street; and 145 Anthony Street.  The Defendants operate these properties as a unified business enterprise from their main office at 632 Broadway, Seventh Floor, New York, New York 10012.

10.     Upon information and belief, Croman exercises ownership and/or control over all of the corporate defendants, to wit: Croman Family Associates, LLC, 9300 Realty Management Inc., 151 Rivington Holdings LLC, 153 Rivington LLC, 182 Stanton LLC, 186 Ave B NY LLC, 215 Avenue B Realty LLC, 326-338 E 100th LLC, 380-382 E 10th LLC, Major Perry Street Corp., and 134 Orchard LLC (collectively, the "Corporate Defendants").

11.     Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. § 1391.  Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process.  The unlawful acts alleged herein have a direct effect on the Plaintiff within the State of New York and

within this judicial district. Defendants do business within the Southern District of New York.

12.     At all relevant times, Defendants were "covered employer[s]" and/or an "employer[s]" under all relevant statutes, including, *inter alia,* the NYCHRL, Fair Labor Standards Act, and NY Labor Law.

13.     This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

14.     A declaratory judgment is authorized in this case by 28 U.S.C. § 2201**.**

## THE PARTIES

15.     Upon information and belief, Defendant CROMAN REAL ESTATE, INC. is a domestic business organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

16.     Upon information and belief, Defendant CROMAN FAMILY ASSOCIATES, LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

17.     Upon information and belief, Defendant 9300 REALTY MANAGEMENT INC. is a domestic business organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

18.     Upon information and belief, Defendant 151 RIVINGTON HOLDINGS LLC is a domestic limited liability company organized and existing under the laws of the State of

New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

19.     Upon information and belief, Defendant 153 RIVINGTON LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

20.     Upon information and belief, Defendant 182 STANTON LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

21.     Upon information and belief, Defendant 215 AVENUE B REALTY LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

22.     Upon information and belief, Defendant 326-338 E. 100TH LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

23.     Upon information and belief, Defendant 380-382 E. 10th LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

24.     Upon information and belief, Defendant MAJOR PERRY STREET CORP is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

25.     Upon information and belief, Defendant 134 ORCHARD LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 632 Broadway, New York, New York 10012.

26.     Croman resides in the State of New York and owns and operates the Corporate Defendants.

27.     Croman, through various corporations, owns and operates approximately 140 buildings in the State of New York.

28.     Upon information and belief, Croman oversees the management of each of his companies, including the Corporate Defendants.

29.     Croman frequently inspected the buildings at which Plaintiff worked.

30.     Croman Real Estate, Inc., Croman Family Associates, LLC, 9300 Realty Management Inc., 151 Rivington Holdings LLC, 153 Rivington LLC, 182 Stanton LLC, 186 Ave B NY LLC, 215 Avenue B Realty LLC, 326-338 E. 100th LLC, 380-382 E. 10th LLC, Major Perry Street Corp, and 134 Orchard LLC each paid the Plaintiff his wages each month and they each willfully misclassified Plaintiff as an independent contractor.

31.     Plaintiff Deleg is an adult individual residing in the City, County and State of New York, who was employed by Defendants to work as a superintendent at various buildings operated and controlled by Defendants in the East Village neighborhood in Manhattan within the last six (6) years.  These buildings were located, *inter alia*, at 382 East Tenth Street; 380 East Tenth Street; 147 Avenue A; 186 Avenue B; 188 Avenue B; 222 Avenue B; 134 Orchard Street; 151 Rivington Street; 153 Rivington Street; and 145 Anthony Street (the "Buildings").

32.     Croman exercises sufficient operational control over the Corporate Defendants' operations to be considered the Plaintiff's employer under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL").

33.     At all relevant times, all Defendants have been the Plaintiff's employer within the meaning of the FLSA and NYLL.  Defendants had the power to hire and fire Plaintiff,

control his terms and conditions of Plaintiff's employment, and determine the rate and method of any compensation in exchange for his services.

<u>**NATURE OF THE ACTION**</u>

34.     The minimum wage under New York State Law was $7.25 from July 24, 2009 to December 31, 2013; $8.00 from December 31, 2013 until December 31, 2014; $8.75 from December 31, 2014 until December 31, 2015; and $9.00 an hour from December 31, 2015 to present.

35.     From July 24, 2009 to present, the federal minimum wage has been $7.25 per hour.

36.     At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that they have been violating federal and state laws and that Plaintiff has been and continues to be economically injured.

37.     Defendants have failed to compensate Plaintiff for every hour he has worked at the statutory minimum wage.  Defendants have compensated Plaintiff for only a small portion of the hours that Plaintiff actually worked.

38.     Defendants have maintained a policy and practice of failing to pay overtime compensation required by federal and state law and regulations.

39.     Defendants had an unlawful practice and policy of requiring Plaintiff to purchase tools of the trade required to carry out his work duties, including various tools used in connection with electrical and plumbing repairs.

40.     Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

41.     Defendants have also willfully and purposely disregarded and evaded the NYLL's requirement that employers furnish employees with wage statements on each payday containing the criteria required under the NYLL 195(3).

42. Defendants failed to pay Plaintiff weekly, in violation of NYLL § 191.

43. Liquidated damages are sought in an amount equal to one hundred percent (100%) of the total amount of wages owed to Plaintiff, pursuant to 29 U.S.C. § 216.

44. Liquidated damages are sought in an amount equal to one hundred percent (100%) of the total amount of wages owed to Plaintiff, pursuant to NYLL § 663.

## FACT ALLEGATIONS

45. Commencing in or about October 2006 until on or about September 15, 2016, Deleg was employed by Defendants, and he performed maintenance, cleaning, repair, janitorial, exterminating, light construction, and related work at Defendants' apartment buildings located in New York County, New York.

46. At all relevant times hereinafter mentioned, Deleg was required to be paid overtime pay at the statutory rate of time and one-half (1 and 1/2) his regular pay after he worked forty (40) hours in a workweek.

47. Deleg worked more than sixty-five (65) hours in most work-weeks in which he was employed by Defendants.

48. Deleg worked more than ten (10) hours on most weekdays during his employment.

49. During a typical weekday, Deleg worked from 5:00 a.m. until approximately 5:00 p.m.

50. Residents of the Buildings regularly made requests of Deleg after they returned from work in the evening. Deleg's evenings and weekends were regularly occupied with communicating with tenants, planning repair work and performing repairs. These repairs encompassed, *inter alia*, fixing leaking toilets; unclogging shower drains; and resetting and replacing fuses.

51.     In the winter, Deleg shoveled snow at all hours of the day and night, and he checked and maintained the boilers seven days per week, many of which were in decrepit condition requiring extensive oversight and maintenance.

52.     Tenants of the Buildings were provided Deleg's cellular telephone number so that they could reach him 24 hours per day, 7 days a week.  Tenants who misplaced their keys would rely on Deleg to provide entry to their apartments at all hours of the night, and Deleg was on-call for such emergent circumstances.

53.     Deleg's telephone number was also posted at entrances to buildings, so that emergency responders and others could contact him to gain entry at various times.  This led to Deleg being contacted and returning to his workplaces at all hours of the day and night.

54.     Deleg would also regularly be contacted by tenants overnight when doors leading to the Buildings' roofs would be opened, thus triggering loud alarms that bothered tenants and which only Deleg, by traveling from his residence in upper Manhattan to the affected building in the East Village, could properly deactivate.

55.     Deleg would also clean, mop, make minor repairs, perform plumbing work, perform electrical work, accept oil deliveries, perform minor carpentry, communicate with tenants, handle recycling, collect and take out the garbage, provide access to real estate brokers to show apartments to prospective tenants, polish floors, paint, clean and repair newly-vacated apartments, install appliances, fix faucets, communicate with contractors, and provide access to police, ambulance and fire personnel.

56.     Deleg was also responsible for snow removal.  As a result, he regularly spent weekends and evenings shoveling snow during the harsh winter months.  During particularly harsh weather, Deleg would pay for laborers to assist him with snow removal – a cost that he incurred from his own pocket without reimbursement from Defendants.

57.     Defendants willfully disregarded and purposely evaded record keeping requirements of the FLSA and NYLL by failing to maintain accurate time sheets and payroll records.  Defendants knew and were aware that Deleg worked extensive periods of time in evenings and weekends.

58.     At all relevant times, Deleg was on call, 24 hours per day, 7 days a week, including on holidays, to address reoccurring emergent issues at the buildings that he was responsible for maintaining in the East Village.

59.     During 2015 and 2016, Deleg worked 67 hours per week to perform his regular duties at the buildings for which he was responsible.  In addition to these regular duties, Deleg spent at least two additional hours per day, seven days a week, handling emergent requests by tenants and others, such as leaking faucets and providing access to tenants who were locked out of their apartments.  Thus, in an average week, Deleg worked a total of 81 hours.

60.     Defendants did not pay Deleg on an hourly basis, in willful violation of State and Federal wage laws.  Instead, Defendants paid Deleg fixed weekly sums, to wit:

| Time Period | Weekly Pay |
|---|---|
| 1/16 – 8/16 | $738.40/week |
| 2015 | $673/week |
| 2014 | $673/week |
| 2013 | $673/week |
| 2012 | $445/week |
| 2011 | $430/week |

61.     Defendants failed to compensate Deleg for time worked in excess of forty (40) hours per week, despite the hours that Deleg worked over forty hours per week and the Defendants' insistence that Deleg perform work and be on-call seven days per week.

62.     Deleg earned less than the fixed salaries paid to him because he incurred, out-of-pocket, work-related expenses, including purchasing tools.

63.     Deleg's salary was also reduced by Defendants' wage theft in the form of payments that Deleg had to make out-of-pocket for laborers/porters who would assist him – a practice that Defendants managers were aware of and that was rendered necessary by the enormous amount of work that Deleg was responsible for as the superintendent of eleven buildings.

**FIRST CAUSE OF ACTION**
**FLSA Minimum Wage Violations, 29 U.S.C. §§ 201 *et seq.***

64.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

65.     At all relevant times hereto, Plaintiff was engaged in interstate "commerce" within the meaning for the FLSA.

66.     Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

67.     At all relevant times hereto, Defendants have employed "employee[s]," including Plaintiff.  Defendants have had the power to hire and fire Plaintiff, control his terms and conditions of employment and determine the rate and method of any compensation in exchange for his employment.

68.     Defendants constitute an enterprise within the meaning of FLSA, 29 U.S.C. § 203(r).

69.     Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA, as detailed herein.

70.     Throughout the statute of limitations period covered by these claims, Defendants failed to pay Plaintiff the federal minimum wage for each hour worked, in violation of 29 U.S.C. § 255(a).

71.    Plaintiff seeks damages in the amount of his respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CAUSE OF ACTION
### Overtime Wage Violations under the FLSA

72.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

73.    At all relevant times hereto, Plaintiff was engaged in interstate "commerce" within the meaning of the FLSA.

74.    Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

75.    At all relevant times hereto, Defendants have employed "employee[s]," including Plaintiff.  Defendants have had the power to hire and fire Plaintiff, control his terms and conditions of employment and determine the rate and method of any compensation in exchange for his employment.

76.    The Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. §203(r).

77.    Throughout the statute of limitations period covered by these claims, Deleg regularly worked in excess of forty (40) hours per week.

78.    Defendants required Deleg as part of his employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in

excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

79.     Deleg seeks damages in the amount of his respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Unpaid Overtime Wages and Spread of Hours Compensation**
**(Violation of NYLL, Articles 6 and 19 and the supporting New York State Department of Labor Regulations)**

80.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

81.     Defendants failed to pay overtime wages to Plaintiff in violation of New York Labor Law Articles 6 and 19 and their implementing regulations, 12 NYCRR § 138-2.1 *et seq.*

82.     Defendants' failure to pay proper overtime wages for each hour worked over 40 per week, was willful within the meaning of Labor Law § 603.

83.     Plaintiff often worked shifts of greater than ten hours without receiving additional "spread of hours" compensation.

84.     Defendants' failure to pay spread of hours compensation violates Labor Law Article 19 § 650, *et seq.*, 12 N.Y.C.R.R. §§ 142-2.4, 142-3.4, and the supporting New York State Department of Labor regulations, specifically the NYLL's provisions requiring "spread of hours" pay, which require an employer such as Defendants, to pay additional "spread of hours" compensation to employees who work shifts of greater than ten hours.

85.     In violation of 12 N.Y.C.R.R. § 142-2.7, Defendants have routinely failed to provide Plaintiff with a statement with every payment of wages listing hours worked and rates paid.

86. Plaintiff seeks recovery of liquidated damages, as well as attorney's fees and costs of this action, as provided by New York Labor Law § 663(1).

87. Plaintiff seeks the amount of underpayments based on Defendants' failure to pay one and one-half times the regular rate of pay for work performed in excess of forty hours per week, and "spread of hours" compensation for his shifts of greater than ten hours, and relief from Defendants' unlawful and willful conduct, as the Court deems just and proper for the period of time commencing six years prior to the filing of this Complaint.

### FOURTH CAUSE OF ACTION
### Minimum Wage Violations – NYLL

88. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

89. At all relevant times hereto, Defendants have been Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

90. Defendants knowingly and willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

91. Defendants failure to pay Plaintiff the minimum wage has been willful within the meaning of the NYLL § 663.

92. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

93. As a result of the foregoing, the Plaintiff seeks judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and

such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Wage Statement Violations

94. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95. Defendants willfully failed to provide Plaintiff with a written notice, in English and in Spanish (Plaintiff's primary language), of his rate of pay, regular pay day, and such information as required by NYLL § 195(3).

96. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants one hundred dollars ($100) for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred ($2,500) dollars per employee, as provided for by the NYLL §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
### Fed. R. Civ. P. 60(d)(1) and (2).

97. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

98. *In Cheeks v. Freeport Pancake House, Inc. et al.*, 796 F.3d 199, 206 (2d Cir. 2015), the Court held that the Second Circuit's requirement of judicial and/or DOL approval of FLSA settlements is intended to insure that wage and hour settlements are not done in a manner that undermines, rather than promotes, the FLSA's broad and remedial purpose of "'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

99.     A settlement reached in an FLSA opt-in class action only binds the parties to the settlement, and in hybrid FLSA and Rule 23 wage cases (such as the Major Perry Case that defendants cite as the basis for their third affirmative defense), the existence of a Rule 23 class does not provide a valid basis for releasing and/or barring FLSA claims of employees who do not opt in.

100.     Courts in this District have refused to approve wage and hour settlements that insulate a defendant from claims by fellow employees because wage law is intended to vindicate, rather than repress, enforcement of employees' rights.

101.     Defendants state: "[Deleg's] claims relating to employment for any period up to and including the 26th day of August 2015, are barred by the Final Order of this Court, dated July 27, 2015, in the [Major Perry Case]". (Defs. Answer p. 11. [Dkt. No. 45]).

102.     Deleg did not affirmatively opt in to the Major Perry Case.

103.     Deleg received no consideration whatsoever from the Major Perry Settlement.

104.     Deleg received zero percent (0%) of the agreed-upon, $625,000 "Gross Settlement Amount" in the Major Perry Case[3], even though Deleg had (and he continues to have) compelling claims for minimum wages and overtime compensation under both the NYLL and FLSA.

105.     In contrast, pursuant to the Major Perry Settlement Agreement, the nine, named plaintiffs in the Major Perry Case shared in $300,000 for their FLSA claims. (Major Perry Settlement Agreement, App. 1 [Major Perry Dkt. No. 102-2].

106.     The Major Perry Settlement Agreement provided for a blanket waiver of all employment claims binding on all Rule 23 class members, even though: (a) 80% of the Rule

---

[3]The amount and apportionment of the Major Perry Settlement Agreement's Gross Settlement Amount are described by Michael Taubenfeld, Esq. (who was one of the attorneys with the law firm of Serrins Fisher LLP who represented the plaintiffs in the Major Perry Case) in the Declaration of Michael Taubenfeld in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notice of Settlement, dated April 14, 2015, ¶¶ 21 - 37 (the "4/14/15 Taubenfeld Declaration") [Major Perry Dkt. No. 102].

23 class members received no compensation; (b) the only possible compensation for Rule 23 class members (which was conditioned on their submission of claim forms) consisted of modest sums relating to wage notice, wage statement, and pay frequency violations, with no provision to compensate them for unpaid minimum and/or overtime wages. (*See* 7/20/15 Taubenfeld Decl. ¶ 29 [Major Perry Dkt. No. 114]).

107.    Pursuant to the Major Perry Settlement Agreement, only the nine named plaintiffs in the Major Perry Case received any compensation for unpaid minimum and/or overtime wages.

108.    In the Major Perry Case, the 100-plus superintendents and porters who were Rule 23 class members who but had not filed opt-ins were relegated to sharing in three settlement funds, totaling $107,736.68, but even that minimal sum was dependent on their filing a notice of claim form.  (4/14/15 Taubenfeld Decl. ¶ 36).   No portion of this sum related to minimum or overtime wages, and payments were remitted to only those employees (approximately 20) who filed claim forms.   (*See* Taubenfeld 7/20/15 Decl. ¶ 29 [Major Perry Dkt. No. 114]).

109.    In summary, most of the Rule 23 class members received no benefit from the Major Perry Settlement Agreement.  Rule 23 class members who filed claim forms received a small fraction of the settlements payable to the named plaintiffs.

110.    Rule 23 class members who (unlike Deleg) submitted claim forms were entitled to receive modest payments that allegedly compensated them for three types of NYLL violations: wage statement violations; wage notice violations; and frequency of wage payment violations (*i.e.*, for defendants' failure to remit wage payments on a weekly basis). (*See* Taubenfeld 7/20/15 Decl. ¶ 26 [Major Perry Dkt. No. 114]).

111.    Only approximately 21% of Rule 23 class members filed proof of claim forms required to participate in the NYLL/R. 23 settlement.  (7/20/15 Taubenfeld Decl. ¶ 40 [Major

Perry Dkt. No. 114). In other words, at least 80 superintendents and porters are purportedly barred by the Major Perry Settlement Agreement from making any employment claims whatsoever arising on or before August 26, 2015, despite having received no consideration.

112. There was no provision and/or mechanism in the Major Perry Settlement Agreement to provide any compensation for unpaid minimum and overtime wages to anyone except for the named plaintiffs.

113. The unfairness and lopsidedness of the Major Perry Settlement Agreement in favor of the named plaintiffs is reflected in the unjustifiable disparities between the settlement amounts payable to the named plaintiffs versus the sums payable to everyone else.

114. For example, based on the submissions to the court in the Major Perry Case, named plaintiff Rudy Colon was entitled to receive a settlement of at least $79,692.18, which consisted of $76,716.83 for his FLSA claims (Major Perry Settlement Agreement, App. 1 [Major Perry Dkt. No. 102-2]; approximately $1,975.35 as his share of the R. 23 settlement funds (7/20/15 Taubenfeld Decl. ¶¶ 26- 32 [Major Perry Dkt. No. 114]); and $1,000 service fee (Major Perry Final Order ¶ 23 [Major Perry Dkt. No. 118]). In contrast, Rule 23 class members who filed claim forms were entitled to total payments of $1,975.35, allocated as follows: "$1,539.66 per Class Member for the NYLL § 191 Frequency of Payment Class, $222.16 per Class Member for the NYLL § 195(1) Wage Notice Class, and $213.53 per Class Member for the NYLL § 195(3) Wage Statement Class." (Taubenfeld 7/20/15 Decl. ¶ 30 [Major Perry Dkt. No. 114]).

115. In actuality, most of the defendants' superintendents and porters received nothing at all from the Major Perry Settlement Agreement.

116. Upon information and belief, except for the named plaintiffs, less than 15 Rule 23 class members in the Major Perry Case submitted proofs of claim. Upon information and belief, this low response, stemmed, in whole or in part, from the inability of

the superintendents and porters, who are largely immigrant workers with limited abilities to speak and/or understand English, to understand the notices of proposed settlement and proof of claim forms, copies of which are in the docket for the Major Perry Case at Dkt. Nos. 102-3, 102-4.

117.    The first page of the Notice of Proposed Settlement in the Major Perry Case ambiguously and confusingly defined the Rule 23 classes by referring to "any building affiliated with Steven Croman" rather than to entities that actually issued pay to porters and superintendents. [Major Perry Dkt. No. 102-3].

118.    This lopsided apportionment in favor of  the named plaintiffs reflects that fact that the Major Perry Settlement Agreement allocated no settlement proceeds to any claims for minimum wage and/or overtime pay due under the NYLL, thus creating a hybrid settlement that: (a) was exceedingly lopsided in favor of FLSA opt-ins, and (b) provided only nominal consideration to R. 23 class members for relatively *de minimis* violations (such as wage notice) of the NYLL rather than more substantive NYLL violations, such as failure to pay minimum wage and/or overtime pay.

119.    The Major Perry Settlement Agreement insulated the defendants of minimum wage and overtime liability for their entire workforce of superintendents and porters by bootstrapping a handful of unsubstantial NYLL settlement provisions (solely for wage notice, wage statement and pay frequency) into a settlement agreement that primarily dealt with FLSA claims, and that provided for egregiously disproportionate financial benefits to the nine named plaintiffs.

120.    The dozens of pages that the parties submitted to the Court in the Major Perry Case in support of their requests for approval of the Major Perry Settlement omitted and/or obfuscated the following, material facts:

- The Major Perry Settlement Agreement allotted no portion of its Gross Settlement Amount to NYLL minimum wage or overtime claims, even though

NYLL minimum wage and overtime claims were of particularly significant value relative to FLSA claims because of the NYLL's longer (six-year) statute of limitations.

- Approximately eighty percent (80%) of the superintendents and porters (*i.e.*, more than 80 workers) who were Rule 23 class members received no consideration, yet were purportedly bound by general releases pertaining to all employment claims.

- Many class members were immigrant workers who may have been reluctant and/or fearful of participating in the Major Perry Case, a fear that may have been heightened by defendants' failed tactic of seeking discovery regarding immigration status.[4]

- Although the Major Perry Settlement Agreement purported to create three Rule 23 classes, its NYLL classes were purposely tailored to be of modest value because they were solely for wage notice, wage statement, and pay frequency violations (rather than minimum wage and overtime) which, relative to the FLSA classes, entailed modest damages.

121. Throughout the proceedings in the Major Perry Case, the parties failed to inform the Court that individuals, including Deleg, who were listed as Rule 23 class members in the appendices to the settlement agreement were designated as independent contractors by defendants and that based upon said designation, were falsely led to believe that they had no rights under wage and hour laws and/or the settlement agreement.

122. In their July 20, 2015 Memorandum of Law, the attorneys for the plaintiffs in the Major Perry Case argued that the proposed settlement agreement was fair because, *inter alia*, defendants had filed a motion to dismiss NYLL claims on the grounds, "that there is no corollary NYLL claim for overtime for building superintendents, which [defendants] argue distinguishes this case from other hybrid FLSA/NYLL cases, all of which may prevent the Classes from recovering anything under these statutes." (7/20/15 Taubenfeld Memorandum of Law at 24 [Dkt. 115]). However, the Court was never told that there were class members, such as Deleg, whose NYLL overtime claims were not barred by New York's "janitor exemption." A blanket waiver of NYLL overtime rights was manifestly unfair to Deleg, as

---

[4] The Court's Decision and Order rejecting discovery regarding immigration status is a published decision, *Colon v. Major Perry Street Corp.*, 987 F.Supp. 2d 451 (S.D.N.Y 2013).

well as to any other member of the Classes who was entitled to received overtime under the NYLL. By failing to inform the Court of the foregoing, the parties in the Major Perry Case concealed the egregious unfairness of the Major Perry Settlement Agreement, and the undermined the integrity of the judicial process.

123.    Distilled to its essence, the Major Perry Settlement Agreement provided the nine named plaintiffs in the Major Perry Case with compensation for unpaid minimum and overtime wages by unfairly and invalidly depriving 100 superintendents and porters who did not opt in of any opportunity to seek redress for unpaid minimum and overtime wage. This is precisely the harm that the Second Circuit and other courts have repeatedly warned against with respect to settlements of hybrid FLSA and R. 23 actions.

124.    To the extent that the Major Perry Settlement purports to affect and/or relate to Deleg and/or diminishes Deleg's wage and hour claims under the FLSA and/or NYLL, the Major Perry Settlement should be adjudged unenforceable and invalid pursuant to Fed. R. Civ. P. 60(d)(1) and (2), or it should be set aside with respect to Deleg.

125.    A binding judicial declaration is thus warranted to establish that the Major Perry Settlement Agreement and Final Order do not impair and/or limit Deleg's wage and hour claims (including but not limited to Deleg's claims for unpaid minimum wages and overtime) under the FLSA and NYLL.

126.    In the Major Perry Case, the parties tried to rationalize an unfair settlement agreement by claiming that if the case did not settle, class members ran the risk of receiving no compensation. However, the Major Perry Settlement Agreement created a far worse situation than that for class members such as Deleg. He received no consideration at all, and he is (allegedly) barred by the settlement from making claims for unpaid minimum and overtime wages. The submissions by the parties to the Court in the Major Perry Case gave no hint of this egregiously unfair outcome.

## RELIEF SOUGHT

**WHEREFORE,** the Plaintiff respectfully requests that the Court grant the following relief:

1.     That the Court declare, adjudge and decree that Defendants violated the minimum wage and overtime provisions of the FLSA;

2.     That the Court declare, adjudge and decree that Defendants violated the minimum wage, spread of hours, and overtime provisions of the NYLL;

3.     That the Court declare, adjudge and decree that Defendants willfully violated their legal duties to pay minimum wages and overtime compensation as required under the FLSA and NYLL;

4.     That the Court declare, adjudge and decree that the Plaintiff was, at all times relevant hereto, and is, entitled to be paid (a) minimum wages; (b) overtime for work beyond 40 hours in a week; (c) remuneration for unlawful deductions; (d) spread-of-hours compensation; and (e) that the amounts to which Plaintiff is entitled is to be doubled as liquidated damages and awarded thereto;

5.     That the Court make an award to the Plaintiff of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

6.     An award of statutory damages for Defendants' failure to provide Plaintiff with accurate wage statements pursuant to NYLL § 198(1-d) and proper wage notices pursuant to NYLL § 198 (1-b);

7.     That the Court make an award to Deleg of reimbursement for all unlawful deductions;

8.     Pursuant to Fed. R. Civ. P. 60(d)(1) and (2), setting aside the Final Order entered by the Court in "Rudy Colon, *et al.*, against Major Perry Street Corp., et al.", U.S.

District Court for the Southern District of New York, Civil Action No. 12 CV 3788, to the extent that the foregoing Order relates to Deleg and/or to Deleg's wage and hour claims asserted herein.

9.    A binding judicial declaration that Deleg's wage and hour claims asserted in this complaint are not barred and/or diminished by the settlement agreement and/or Final Order in "Rudy Colon, *et al.*, against Major Perry Street Corp., et al.", U.S. District Court for the Southern District of New York, Civil Action No. 12 CV 3788.

10.    For all other Orders and Findings identified and sought in this Complaint;

11.    For prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

12.    For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), NYLL and as otherwise provided by law; and

13.    Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York                    **RAPAPORT LAW FIRM, PLLC**
        November 22, 2016

                                By:    _____/s/_____
                                       Marc A. Rapaport
                                       Attorney for Plaintiff, Manuel Deleg
                                       Rapaport Law Firm, PLLC
                                       One Penn Plaza, Suite 2430
                                     New York, New York 10119
                                     Phone: (212) 382-1600